EL PUEBLO, DEMANDANTE Y APELADO, *v.* ARROYO ET AL., ACUSADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Ponce en causa por adulteración de leche.

No. 2095.—Resuelto en junio 26, 1923.

DELITO CONTRA LA SALUD PÚBLICA—ADULTERACIÓN DE LECHE—ACUSACIÓN SUFICIENTE.—Una acusación por violación a la ley sobre adulteración de leche, que substancialmente alega que los acusados ''ilegal, intencional y voluntariamente vendieron leche de vaca adulterada'' no deja de ser suficiente porque omita alegar que vendieran tal leche ''como si fuera pura.''

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. C. Brunet.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. FRANCO SOTO, emitió la opinión del tribunal.

En este caso se formuló acusación contra Dolores Arroyo y Gonzálo Nieves por violación de la ley sobre adulteración de leche, aprobada en marzo 10 de 1910. Los acusados fueron declarados culpables y se les impuso la correspondiente pena. Contra la sentencia interpusieron el presente recurso

y en su alegato sostienen: 1°., que la acusación no aduce he-
chos suficientes para determinar una causa de acción; y 2°.,
que la corte inferior apreció erróneamente los hechos.

La acusación presentada dice:

"Los citados Dolores Arroyo y Gonzalo Nieves, el día 7 de febrero
de 1923 y dentro del distrito judicial de la Corte de Distrito de
Ponce, P. R., ilegal, intencional y voluntariamente, vendieron le-
che de vaca adulterada. Hecho contrario a la ley para tal caso
prevista y a la paz y dignidad del Pueblo de Puerto Rico.—(f)
Agustín E. Font, Fiscal del Distrito."

El reparo que oponen los acusados es que, para que di-
cha acusación fuera completa hacía falta la alegación de que
los acusados vendieron la leche "como si fuera pura" por-
que la venta de leche adulterada, si se vende abiertamente,
sabiendo el comprador que es adulterada, no está prohibido
por estatuto.

La sección primera de la ley proveyendo lo necesario para
castigar la adulteración de leche, ofrecerla o tenerla para la
venta, aprobada en marzo 10 de 1910, dice:

"Sección 1.—Toda persona que adulterare o diluyere leche con
la intención de ofrecerla a la venta o que causare o permitiere que
se ofrezca en venta, y toda persona que la vendiere, ofreciere o tu-
viere en venta, será culpable de delito menos grave (*misdemeanor*)
y castigada con encarcelamiento que no exceda de un mes y además
de dicha pena se confiscará la leche adulterada:  *  *  *  ."

Según los términos de esta sección, no podemos convenir
con los apelantes en la interpretación que intentan inferir
de dicha ley. Si se admitiera tal interpretación habríamos
destruído el verdadero propósito para que fué creada. El
fin o alcance de dicha ley fué algo más que evitar el fraude
con perjuicio de un interés puramente material y más bien
se estableció para proteger la comunidad, como cuestión de
interés vital en relación a la salud pública. De manera, que
lo que castiga la ley no es el engaño y sí que se pueda cau-
sar daño a la salud del consumidor, conforme sostiene la

parte apelada, no adoleciendo, por tanto, la acusación del defecto señalado.

El segundo error se refiere a la apreciación de la prueba.

La práctica de la prueba se redujo por parte del gobierno a la declaración del testigo Américo Méndez, inspector de sanidad que produjo la denuncia, y un dictamen del Laboratorio Químico Insular relativo al análisis de la leche ocupada, y admitido sin objeción. De este dictamen resulta que el grado de la leche no correspondía al grado legal o *standard* fijado por los reglamentos de Sanidad y claramente su adulteración quedó comprobada. Véanse los casos de *El Pueblo* v. *Rivera et al.,* de marzo 26, 1923, 31 D. P. R. 646, y *El Pueblo* v. *Massari,* resuelto en junio 8, 1923, (pág. 19).

En cuanto a la participación de los acusados en el delito, la prueba fué contradictoria por lo que se refiere a Dolores Arroyo, pero el conflicto fué resuelto en su contra y nada encontramos que nos permita intervenir con la apreciación que de la prueba hizo el juez inferior. Es cierto que no existe más acusación contra Dolores Arroyo que las simples manifestaciones del testigo de cargo Américo Méndez de que Dolores Arroyo le confesó ser el dueño de la leche ocupada y que también le había visto manipulando con leche en el "Frigorífico" de Ponce y asimismo aparece que tales manifestaciones fueron negadas por dicho acusado declarando que solamente es un empleado del ".Frigorífico" y señalando por su nombre al dueño del mismo, pero parece que el juez sentenciador tomando en consideración todas las circunstancias de este caso admitió y basó su sentencia en el testimonio del testigo del gobierno; y no habiéndose demostrado pasión, prejuicio, parcialidad o manifiesto error, conforme con la constante y repetida jurisprudencia de esta Corte Suprema, debemos sostener la conclusión a que llegó la corte inferior.

Respecto al otro acusado Gonzalo Nieves, la prueba solamente demuestra que era meramente un muchacho empleado

del "Frigorífico" y no existe evidencia alguna que indique su participación en el delito.

Por lo expuesto, la sentencia debe ser confirmada en cuanto a Dolores Arroyo y revocada respecto a Gonzalo Nieves, a quien se le declara absuelto.

> *Confirmada en parte y revocada respecto del*
> *acusado G. Nieves, absuelto.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.